# United States Court of Appeals
# for the Fifth Circuit

---

No. 25-40286

---

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2026

Lyle W. Cayce
Clerk

James George,

*Plaintiff—Appellant*,

*versus*

SI Group, Incorporated, *doing business as* Schenectady International, Incorporated; Brenner Tank Services, L.L.C.; Bulk Solutions, L.L.C.,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:16-CV-360

---

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Per Curiam:[*]

This case arises out of an accident that resulted in severe burns to James George when a tanker trailer full of scalding water tipped over and poured water into the cab of the truck in which George had been sitting. George brought claims against SI Group, Inc. ("SI Group"), the owner of the premises on which the accident occurred; Bulk Solutions, L.L.C.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-40286

("Bulk"), the distributor of the trailer; and Brenner Tank Services, L.L.C. ("Brenner"), one of the designers of the trailer. The district court granted summary judgment in favor of each of these defendants. Finding no error, we AFFIRM.[1]

## I.    Background

In August 2016, an employee of Veolia, James George suffered severe burns over much of his body resulting from a hot water tanker trailer tipping over and spilling water into the cab of the truck in which he was sitting. SI Group had hired Veolia to perform a hot water wash on one of SI Group's chemical tanks. This process required the use of several trailers full of hot water, referred to as tanker trailers, and one vacuum truck. To perform the hot water wash, Veolia would pump hot water out of a tanker trailer, spray it into the storage tank, test the water, then pump the contaminated water back out with a vacuum truck. Eventually the vacuum truck would fill with water and need to be emptied, and the empty tanker trailer would need to be refilled.

On the day of the accident, George and the other Veolia workers went to the SI Group permit shack to receive their permit. Reginald "TK" Hall, an SI Group employee, issued the permit, which covered the scope of the job. While walking the jobsite before the permit was issued, SI Group employees directed Veolia contractors to park the tanker trailer and vacuum truck in the staging area. SI Group maintains that the scope of Veolia's work did not require it to disconnect any tanker trailers from the tractor that pulled them anywhere other than the paved refilling area where it swapped out the tanker trailers.

_____

[1] Judge Higginson concurs in the judgment only.

No. 25-40286

Prior to the accident, the tanker trailer next to the vacuum truck ran out of water, and Veolia employees switched out the empty trailer for a full one. After an air bag in the tractor pulling the tanker trailer blew while backing in with the new hot water trailer, Joe Armstrong, the Veolia employee driving the tractor, and Michael Munoz, another Veolia employee, called a supervisor, who told them to disconnect the tractor from the tanker trailer and wait for the mechanic. George helped Armstrong disconnect hoses from the tanker trailer and climbed into the passenger seat of the vacuum truck, which had the windows open, to wait while Armstrong moved the tractor. The Veolia crew left the tanker trailer on the gravel on its landing gear a few feet from the vacuum truck in which George was sitting, without putting down any mats under the landing gear or closing the hatch on top of the trailer, which was full of 200-degree water. The tanker trailer at issue was manufactured by Bulk Tank International ("BTI"), a Mexican corporation, designed in part by Brenner, and distributed by Bulk.

Within minutes of the tanker trailer being set down, one of the legs of its landing gear sank into the gravel and the trailer tipped over, dumping scalding water through the open window of the vacuum truck. George jumped out of the window and was taken to the safety shower and then to the hospital.

After the accident, George sued several companies in state court, and SI Group removed the lawsuit to federal court based on diversity jurisdiction. George brought a premises-liability claim against SI Group and products-liability claims against Bulk, BTI, and Brenner.[2] The district court

_____

[2] George also brought a products-liability claim against Evergreen Tank, the owner of the tanker trailer who leased it to SI Group, which was dismissed by the district court and affirmed by our court on the basis that it was immunized as a non-manufacturing seller

3

initially dismissed George's claims against Bulk, BTI,[3] and Brenner, and it granted SI Group's motion for summary judgment. George appealed. In 2022, our court reversed the district court's dismissal of the claims against Bulk, BTI, and Brenner. *George v. SI Grp., Inc.*, 36 F.4th 611, 623–24 (5th Cir. 2022). It also reversed the grant of summary judgment for SI Group, which had been based on the application of Chapter 95 of the Texas Civil Practice and Remedies Code, and remanded the claim to the district court "with instructions to analyze George's premises-defect claim under Texas common law." *Id.* at 624. The district court then dismissed George's manufacturing-defect claims against Bulk and Brenner, concluded that George adequately pleaded his warning-defect and design-defect claims against them, and denied SI Group's motion for summary judgment on George's premises-liability claim. The case was then reassigned to Judge Drew B. Tipton and, after additional discovery, SI Group moved for reconsideration of summary judgment and for summary judgment on additional grounds. The district court granted both motions.

Bulk independently moved for summary judgment on George's products-liability claims based on its status as a non-manufacturing seller, and Brenner and Bulk jointly moved for summary judgment on George's products-liability claims. The district court granted both motions. In addition to these dispositive motions, the district court granted SI Group's motion to exclude George's expert Benjamin Gibson's opinions regarding SI Group's knowledge of a dangerous condition. The district court entered final judgment and George timely appealed.

---

under Tex. Civ. Prac. & Rem. Code § 82.003(1). *See George v. SI Grp., Inc.*, 36 F.4th 611, 620–21 (5th Cir. 2022).

[3] BTI was served but did not answer or appear; it is not in play here. *George*, 36 F.4th at 615.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction under 28 U.S.C. §§ 1441 and 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review a grant of summary judgment de novo, applying the same standards as the district court. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Summary judgment should be granted where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *In re Deepwater Horizon*, 48 F.4th 378, 382 (5th Cir. 2022) (citation modified). On summary judgment, we "view[] all evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007).

We review a district court's exclusion of expert testimony for abuse of discretion. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016). "Wide latitude is granted to what the trial court decides. That discretion will not be disturbed on appeal unless it is manifestly erroneous." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citation modified).

## III.    Discussion

George takes issue on appeal with the district court's analysis of both his premises liability and products liability claims. We address each in turn.

### A. Premises Liability

George's premises liability claims are relevant only to SI Group which filed a summary judgment on these claims. "There are two types of premises defects for which an independent contractor's employee may seek to hold the general contractor liable." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952

S.W.2d 523, 527 (Tex. 1997). The first type ("Type 1") "are those defects that exist on the premises . . . or that are created through some means unrelated to the activity of the injured employee or his employer," in which case "the general contractor has a duty to inspect the premises and warn the invitee of those dangerous conditions of which the general contractor knows or should know." *Id.* The second type ("Type 2") "are those defects the independent contractor (or its injured employee) created by its work activity," *id.*, in which case the general contractor must warn about such defects only if it retains supervisory control "relate[d] to the condition or activity that caused the injury," *id.* at 528, or the right to control the contractor's work, *see id.* "If there is no contractual right to control, however, the general contractor can be liable if it actually exercised control, contrary to the contract's terms." *Id.*[4]

George contends that the district court erred in its analysis of his Type 1 and Type 2 claims.

First, with respect to the Type 1 claim, following the accident, SI Group and Veolia investigated the cause. George cites SI Group's post-accident investigative report and Veolia's post-accident report as evidence that SI Group had actual knowledge of the unstable ground before the

---

[4] The district court incorrectly identified the first type as the "premises condition theory" and the second as the "negligent activity theory." Under Texas law, a negligent activity claim is distinct from a premises defect claim. *See*, *e.g.*, *Olivo*, 952 S.W.2d at 528 (distinguishing between the two types of claims); *Sampson v. Univ. of Tex. at Aus.*, 500 S.W.3d 380, 388 (Tex. 2016) (same). George did not assert a negligent activity claim. *See George*, 36 F.4th at 618 ("George alleged a premises-defect claim against SI Group and products-liability claims against Bulk Tank International, Bulk Solutions, Brenner Tank, and Evergreen Tank."). Insofar as there is overlap between negligent activity and Type 2 premises-defect claims in that the "right to control" rule applies in both types of claims, *see Olivo*, 952 S.W.2d at 528, we analyze the district court's analysis and George's arguments on this point in the context of a Type 2 claim.

accident. George maintains that the district court erred in declining to consider whether the reports created a fact question as to whether SI Group should have known of the condition, and he suggests that the observation in SI Group's post-accident report that "fire monitors allow some water to leak into the ground during operation" is evidence that SI Group had constructive knowledge of a dangerous condition. We disagree. As the district court correctly pointed out, these post-accident reports are not evidence that SI Group knew or should have known of any unsafe condition *prior* to the accident.

George also relies on Michael Munoz's testimony that, after the accident, he overheard two SI Group employees talking about a leak, and that he thought they were talking about a leak from before the accident, to suggest that there was evidence that SI Group had actual or constructive knowledge of an unsafe condition. In addition to being inadmissible hearsay, *see George,* 36 F.4th at 625–26 (Haynes, J., concurring in the judgment in part and dissenting in part), this testimony does not create a genuine dispute of fact as to whether SI Group knew or should have known of a dangerous condition prior to the accident. As the district court noted, Munoz admitted that the SI Group employees did not mention when the leak occurred or when the fire monitor was out of service, and his mere speculation that they were talking about the period before the accident is not evidence that SI Group knew of a dangerous condition before the accident.

Finally, George contends that the district court failed to engage with the testimony of TK Hall, an SI Group employee, which he maintains created an issue of fact as to whether SI Group exercised ordinary care during its inspection the morning of the accident. The cited evidence, however, does no such thing. George notes that Hall testified that a SI Group "safety and maintenance" entity checks how solid the ground is prior to the work beginning and that it should have been discussed with SI Group's "safety"

entity that a trailer could tip over if uncoupled on the gravel. He also notes that Hall testified that he knew the trailer would tip over if uncoupled on the gravel. George suggests that this shows actual and constructive knowledge of a dangerous condition. To the contrary, although George states in his brief that Hall testified that the hazard should have been identified and SI Group should have checked to ensure that the staging area was safe, the evidence he cites for that proposition states that a SI Group "safety and maintenance" entity does check the ground where the tanker trailers are staged. This is therefore not evidence that SI Group did not take reasonable care, and the district court did not err in granting summary judgment for SI Group on the basis that it lacked knowledge of an unsafe condition.

George also maintains that the district court erred by excluding the opinion of his expert, Benjamin Gibson, as to SI Group's knowledge of a dangerous condition. Again, we disagree.

Per Federal Rule of Evidence 702, a witness "qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony if it will "help the trier of fact to understand the evidence or to determine a fact in issue," is "based on sufficient facts or data," is "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. Before admitting an expert's testimony, "the court must also gauge whether the witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (citation modified).

The district court concluded that Gibson had no expertise or specific knowledge that shed light on the issue of whether SI Group had actual or

constructive knowledge of a dangerous condition. Specifically, it noted that Gibson "merely evaluates the evidence discussed above and draws his own conclusions without relying on any specialized education and expertise." This was not an abuse of discretion.

We next turn to George's Type 2 claim. First, insofar as this type of premises defect claim pertains to a *condition* created by the independent contractor's work, as opposed to a distinct negligent activity claim, *see Olivo*, 952 S.W.2d at 528, George does not identify what condition was created by the independent contractor's work that caused his injury. He instead argues only that SI Group had control over the *activity* that caused his injuries. He therefore has not produced evidence sufficient to support a Type 2 claim.

Further, there is no indication that SI Group controlled the safety practices of the Veolia workers. The contractor agreement between the parties stated that Veolia "shall take all necessary precautions for safety of, and the prevention of injury, loss and damage to, persons and property on or about or adjacent to premises where the Work is being performed and which may result from Work being performed," and that Veolia "acknowledges and accepts full responsibility for inspecting and determining the adequacy of any equipment used while performing Work." SI Group therefore did not retain contractual authority to control the safety practices of the Veolia workers. George maintains that the testimony of TK Hall, SI Group's permit issuer, that Veolia would have to use matting if SI Group required it creates a fact issue as to whether Veolia had the right to control the work that resulted in George's injury. This cannot be the case. As the Supreme Court of Texas noted in *Olivo*, "[i]f there is no contractual right to control, . . . the general contractor can be liable if it actually exercised control, contrary to the contract's terms." 952 S.W.2d at 528. Hall's testimony is not evidence that SI Group actually exercised control. To the contrary, although Hall posits that SI Group *could* have forced Veolia to use matting, it clearly did not do

so. As such, it is not apparent that SI Group exercised control over the work performed.

### B. Products Liability

George's products liability claims are relevant only to the Bulk and Brenner entities which filed a summary judgment on these claims. First, George does not challenge the conclusion that Bulk was entitled to summary judgment as a non-manufacturing seller under Chapter 82 of the Texas Civil Practice and Remedies Code, and thus summary judgment in favor of Bulk is affirmed on this basis. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

Turning to Brenner, George contends that the district court erred when concluding that Brenner was entitled to summary judgment on both George's marketing defect/failure-to-warn claim and his design defect claim. As to the marketing defect/failure-to-warn claim, the district court concluded that the summary judgment evidence established that foreseeable users of the tanker trailer would have special training and knowledge about the risks of unhooking the trailer on an unlevel surface and thus no warning was necessary. As to the design defect claim, the district court concluded that Armstrong's failure to use matting when uncoupling the trailer on an unlevel surface was the but-for or producing cause of George's injuries, rather than the design of the trailer itself.

George maintains that there were issues of fact as to both claims. As to the marketing defect/failure-to-warn claim, he argues that there were fact issues because he submitted expert opinions stating that the existing warnings on the product were insufficient to warn users. As to the design defect claim, he maintains that there were fact issues because he submitted evidence that the trailer had defects making it unreasonably dangerous for its

foreseeable use—namely, that its landing gear's pads were too small and that its landing gear was too narrow.

We start with the marketing defect/failure-to-warn claim. "A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). "The existence of a duty to warn of dangers or instruct as to the proper use of a product is a question of law." *Id.* Under Texas law, "[a] supplier has no duty to warn of risks involved in a product's use that are commonly known to foreseeable users, even if some users are not aware of them." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 183 (Tex. 2004). "When the foreseeable users of a product have special training, a supplier has no duty to warn of risks that should be obvious to them, even if persons without such training would not appreciate the risks." *Id.*; *see also Sauder Custom Fabrication, Inc. v. Boyd*, 967 S.W.2d 349, 351 (Tex. 1998) (per curiam) ("No ordinary person trained to do the work Boyd and his crew were doing could have failed to appreciate the obvious risk of falling. Thus, as a matter of law, Sauder had no duty to warn of the risk.").

The record shows that the risk of dropping the tanker trailer on its landing gear on a gravel surface without any sort of stabilizing matting would be commonly known and obvious to foreseeable users. Joe Armstrong, the Veolia employee who unhitched the trailer, received his commercial driver's license ("CDL") in December 2015. Under Texas law, a CDL is required to drive a commercial motor vehicle ("CMV"). *See* Tex. Transp. Code § 522.011(a). The Texas Commercial Motor Vehicle Drivers Handbook, of which Armstrong "read every single chapter and every single section,"[5]

---

[5] Although whether there was a duty to warn turns on what was obvious to the average user of a product, *see Boyd*, 967 S.W.2d at 349, and not necessarily whether the

instructs users that, before uncoupling tractor-semitrailers, they must "[m]ake sure surface of parking area can support weight of trailer." According to Veolia's former safety manager, drivers are taught to lay down mats if they must uncouple a loaded trailer on a surface other than concrete. The record evidence also reflects that using mats when decoupling a trailer was standard practice for CMV drivers.

Given the record evidence that foreseeable users of the tanker trailer would be required to receive special training and to receive a special license in order to operate such trailers, and that the risk of dropping the tanker trailer on its landing gear on a gravel surface without any sort of stabilizing matting would be commonly known and obvious to such users, the district court did not err in concluding that there was no duty to warn of the danger of dropping the trailer on a gravel surface without mats. Summary judgment for Brenner on this claim was therefore proper.

We now turn to the design defect claim. To succeed on a design defect claim, "a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009). To be a "producing cause" of a plaintiff's injuries, "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). "[T]here may be more than one producing cause of an event." *Id.* at 45. "Causation generally is a question of fact for the jury," but, "if all the facts

---

specific user knew of the risk, this is still evidence of what the average users of the tanker trailer, CMV drivers, would know.

and inferences point so strongly against causation that no reasonable jury could find causation," then it may be decided as a matter of law. *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1044 (5th Cir. 2011) (citation modified).

The district court concluded that, "even if the trailer's design was defective, it was not the producing cause of George's injuries." Rather, it concluded that it was undisputed that the producing cause of George's injuries "was Armstrong's failure to use matting when uncoupling the trailer on an unlevel surface, and not the design of the trailer itself." The district court's analysis suggests that the fact that Armstrong's actions were "the" producing cause necessarily means that the design of the trailer was not a producing cause. It is arguable that even if Armstrong's failure to use matting to stabilize the trailer was *a* producing cause, if the trailer had been defectively designed, that too could have been a substantial cause of the event at issue and a cause without which the event would not have occurred. *See Ford Motor Co.*, 242 S.W.3d at 46. That would question the district court's analysis on this point.

But even if so, "[w]e may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). The record shows that George did not produce sufficient evidence to raise a genuine dispute of fact as to whether the tanker trailer "was defectively designed so as to render it unreasonably dangerous." *Timpte Indus., Inc.*, 286 S.W.3d at 311. To determine whether a product was defectively designed so as to be rendered unreasonably dangerous, Texas courts apply a risk-utility analysis requiring consideration of the following factors:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer.

*Id.* (citation modified). Courts are to apply this analysis "in the context of the product's intended use and its intended users." *Id.* at 312.

None of these factors weigh in George's favor. First, George identified no evidence that the risk and gravity of his injury outweighed the likelihood of injury from its use. To the contrary, given the fact that ordinary users of such a tanker trailer would know not to stand it on its landing gear on gravel without mats or alternative stabilizing support, the risk of someone being injured as George was does not outweigh the utility of the trailer to the user and to the public. As to the second and third considerations, George's experts identify two safer alternative designs: landing gear with larger feet and wider landing gear. One of George's experts notes, without explanation or support, that larger feet are "readily-available," but George identifies no evidence that these larger feet would not be unsafe, unreasonably expensive, or that using larger feet would not seriously impair the usefulness of the tanker trailer. Similarly, there is no evidence that a wider landing gear would not be unsafe or unreasonably expensive, or that it could be implemented without impairing the usefulness of the tanker trailer or significantly increasing its cost. As to the fourth and fifth considerations, users of the trailer would know about the dangers inherent in dropping it on gravel and

that they may be avoided by using mats when placing the landing gear on such uneven surfaces. Because all the risk-utility analysis considerations plainly weigh in favor of the conclusion that the design was not unreasonably dangerous, as a matter of law, the tanker trailer was not unreasonably dangerous because of a defective design. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 260–61 (Tex. 1999). Summary judgment for Brenner is therefore proper on this basis.

## IV.    Conclusion

The district court did not err in concluding that SI Group, Bulk, and Brenner were entitled to summary judgment on George's claims, and it did not abuse its discretion in excluding Benjamin Gibson's expert opinion as to SI Group's knowledge of a dangerous condition. Accordingly, we AFFIRM.